UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD K.,[1] ) | |
| ) | No. 21 CV 1112 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| KILOLO KIJAKAZI, Commissioner ) | |
| of Social Security, ) | |
| ) | August 28, 2023 |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

Ronald K. seeks disability insurance benefits ("DIB") asserting he is disabled by ulcerative chronic pancolitis, irritable bowel syndrome ("IBS"), and depression. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for DIB. Before the court are the parties' cross motions for summary judgment. For the following reasons, Ronald's motion is granted, and the government's is denied:

**Procedural History**

Ronald filed his application for DIB in November 2018, alleging disability onset as of September 2018. (Administrative Record ("A.R.") 15, 149-50.) At the administrative level, his application was denied initially and upon reconsideration. (Id. at 15, 53-64, 67-80.) He then sought and was granted a telephonic hearing before an Administrative Law Judge ("ALJ"). (Id. at 15, 94-95, 112-21.) Ronald appeared

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect his privacy to the extent possible.

with an attorney at the November 2020 hearing, during which he and a vocational expert ("VE") testified. (Id. at 15, 35-52.) The ALJ ruled in December 2020 that Ronald was not disabled. (Id. at 15-30.) The Appeals Council denied Ronald's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Ronald filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 5).

## Analysis

Ronald argues that the ALJ's decision cannot stand because when formulating his residual functional capacity ("RFC"), the ALJ did not consider all relevant evidence relating to his mental impairments or his need to take breaks beyond what an employer would permit.[2] (R. 11, Pl.'s Mem. at 6-14.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and his decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide

---

[2] The ALJ found that Ronald had the RFC to perform medium work limited by occasional climbing of ladders, ropes, or scaffolds and frequent stooping, kneeling, crouching, and crawling, along with ready access to a bathroom. (A.R. 24.)

a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the arguments and the record, the court concludes that a remand is warranted because the ALJ's analysis fails to "say enough" to explain how he considered limitations resulting from Ronald's mental impairments, or the combined effect of his mental and physical impairments on his ability to work.

**A.     Mental RFC Assessment**

Ronald argues that the ALJ's mental RFC assessment is flawed. (R. 11, Pl.'s Mem. at 8-12.) The RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing a claimant's RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ also "must give weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Chambers v. Saul*, 861 Fed. Appx. 95, 101 (7th Cir. 2021) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).

Ronald contends that the ALJ failed to account for non-exertional limitations when assessing his mental RFC. (R. 11, Pl.'s Mem. at 8-12.) The government

3

responds that the ALJ properly found Ronald's mental impairments to be non-severe and therefore was justified in including no limitations for them in his RFC. (R. 17, Govt.'s Mem. at 4.) At step two the ALJ considered the paragraph B criteria and determined that Ronald's depression was non-severe because there was "no evidence that [Ronald's depression] ha[d] more than a minimal limitation on [his] ability to perform work-related activities." (A.R. 21-23.) Relying largely on Ronald's daily activities, including his ability to manage finances, shop in stores, drive, and visit with family, the ALJ assessed mild limitations in each of the four paragraph B categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself. (Id. at 22.) Setting aside whether the ALJ erred at step two, he erred when assessing the RFC by not considering limitations resulting from Ronald's depression, either singly or in combination with effects of his physical impairments. *See Villano*, 556 F.3d at 563.

Although the ALJ noted Ronald's depression and his medication, (A.R. 21-23, 26-27), he glossed over medical evidence describing the nature of this impairment. For example, the ALJ failed to acknowledge evidence showing that Ronald suffers from diagnosed depression. (See, e.g., id. at 202, 218, 263, 403, 407, 416, 421, 425, 440, 445, 449, 612; see also id. at 293 (diagnosing Ronald with major depressive disorder).) Nor did the ALJ discuss Ronald's participation in "regular" psychiatric treatment. (Id. at 393; see also id. at 195, 266, 276, 278, 293 355, 392, 407, 426, 452, 615 (documenting medication prescribed to treat Ronald's depression)). Instead, the

4

ALJ relied on an August 2020 examination record indicating "no evidence of depression, anxiety or agitation." (Id. at 23, 26, 27 (citing id. at 627-29).) As Ronald points out, however, that visit related to his ulcerative colitis symptoms, and the physician appeared to perform only a "'mini mental status examination' . . . within the context of a physical examination." (R. 11, Pl.'s Mem. at 11 (citing A.R. 627).) The Seventh Circuit has cautioned ALJs against "fixat[ing] on select portions of treatment notes" describing mental symptoms "*on the days of . . . appointments*," rather than relying on diagnoses and "general assessments." *Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (emphasis in original).

Moreover, the ALJ rejected the consultative psychological examiner's ("CE") opinion that Ronald had: "[f]air" ability to relate to others; "[f]air" ability to understand, remember, and follow simple directions; "[f]air to [p]oor" ability to maintain the attention required to perform simple, repetitive tasks and sustain concentration, persistence, and pace ("CPP"); and "[f]air to [p]oor" ability and adaptive capacity to withstand stress. (A.R. 26, 393-94.) The ALJ did so in part because the CE did not use "Social Security Administration approved terms such as mild, moderate, etc.," (id. at 26), but this is not a "sound reason[]" to dismiss the CE's opinions, *Gerstner*, 879 F.3d at 263. While the ALJ also stated that the CE's opinion was "not consistent with more than mild limitations [in] the mental status examination," the ALJ ignored the CE's findings that Ronald had "received outpatient treatments from [psychiatrist] Dr. Allen Kuo on a regular basis for depression," been taking "Cymbalta for 15 years" for depression, and experienced

5

"helplessness, hopelessness, [] anhedonia," and low energy throughout the day. (A.R. 391-95.) The ALJ also overlooked the extent to which the treating physicians' opinions support the CE's opinion. (See id. at 984-87 (treating internist Dr. Jemini Ignacio's opinion documenting Ronald's depression and indicating that his pain and other symptoms were severe enough to frequently interfere with CPP), 991-94 (treating gastroenterologist Dr. Greg Gambla's opinion stating same).)

Accordingly, the ALJ erred when crafting the RFC by not accounting for limitations resulting from Ronald's depression, such as his need for low-stress work and CPP-related restrictions, (id.; see also id. at 393-94), and the court cannot say with confidence that such error was harmless. Without explaining how Ronald is capable of performing medium work given limitations resulting from his mental impairments, the ALJ failed to trace a path of reasoning between the evidence and his conclusion. *See Colson v. Colvin*, 120 F. Supp. 3d 778, 789-90 (N.D. Ill. 2015). As such, the ALJ must revisit this issue on remand.

**B.     Physical RFC Assessment**

Ronald argues that the ALJ also erred by failing to consider evidence showing that he requires six unscheduled bathroom breaks a day, and thus would be off task for more time than an employer would tolerate. (R. 11, Pl.'s Mem. at 12-14.) He complains that when declining to include such a limitation in his RFC, the ALJ focused only on those instances in which his ulcerative colitis symptoms were not dire, and merely glossed over the occasions in which they were dire. (Id.) The government responds that this issue amounts to weighing of evidence, and that the

6

ALJ provided "compelling reasons" to side with five opinions showing Ronald was capable of performing medium work with ready access to a bathroom. (R. 17, Govt.'s Mem. at 1-2, 5-7.)

The court does not have the same concerns with the ALJ's evaluation of Ronald's physical RFC that it has with the mental RFC. Despite Ronald's complaints about the ALJ's treatment of his need for bathroom breaks, the ALJ thoroughly discussed Ronald's testimony, objective medical evidence, and opinion evidence regarding this limitation. To be sure, the ALJ discussed Ronald's testimony that he needs to use the bathroom without warning up to 8 to 10 times per day as a result of his ulcerative colitis. (A.R. 24, 44-45.) The ALJ also addressed Ronald's diagnosis of ulcerative colitis and noted that Ronald had 1 to 4 bowel movements a day. (Id. at 25). Although the ALJ acknowledged Ronald's reports to providers that he had 8 to 10 bowel movements a day, in mid-2019 his condition improved with Entyvio infusions, and by April 2020 he had only about 2 to 3 bowel movements per day. (Id.) The ALJ also evaluated opinion evidence and rejected two treating physicians' opinions that Ronald would need at least 6 bathroom breaks a day, for about 15 minutes each. (Id. at 25, 984-87, 991-94.) To support his assessment, the ALJ cited the inconsistency between the treating physicians' opinions that the ulcerative colitis caused Ronald "severe physical limitations" and the record evidence, which he found showed a decrease in the frequency of bowel movements with medication. (Id. at 27.) The ALJ instead found persuasive the state agency medical consultants' opinions that Ronald

7

could perform medium work with postural limitations and "[r]eady access to [a] bathroom." (Id. at 24.)

That said, despite the ALJ's more detailed analysis of the evidence relating to Ronald's need for bathroom breaks, the ALJ will need to perform a new RFC assessment on remand as discussed. In doing so, the ALJ will be required to consider not only limitations resulting from Ronald's mental impairments but also the combined effect of his mental and physical impairments on his ability to work.

## Conclusion

For the foregoing reasons, Ronald's motion for summary judgment is granted, the government's is denied, and this matter is remanded.

                **ENTER:**

                _____
                **Young B. Kim**
                **United States Magistrate Judge**